**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RICHARD D. TURZAI**, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **THE CITY OF PITTSBURGH**; | ) | Civil Action No. 08-1740 |
| **ROBYN L. BOTTESCH**, individually | ) | |
| and as an officer for the City of Pittsburgh; | ) | |
| **JOSEPH REIFF,** individually and as an | ) | |
| officer for the City of Pittsburgh; | ) | |
| **THOMAS HENDERSON**, individually | ) | |
| and as an officer for the City of Pittsburgh; | ) | |
| **MATHEW TURKO**, individually | ) | |
| and as an officer for the City of Pittsburgh; | ) | |
| and **GEORGETTE A. SCAFEDE**, | ) | |
| individually and as an officer for the | ) | |
| City of Pittsburgh, | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

CONTI, District Judge

### *Introduction*

Pending before this court is a motion for summary judgment (Joint Mot. for Summ. J. by Defs.

City of Pittsburgh and Officers Robyn L. Bottesch, Joseph Reiff, Thomas Henderson, Matthew Turko

and Georgette A. Scafede, ECF No. 23) filed by defendants the City of Pittsburgh, Robyn Bottesch

("Bottesch"), Joseph Reiff ("Reiff"), Thomas Henderson ("Henderson"), Mathew Turko ("Turko"), and

Georgette Scafede ("Scafede") (Bottesch, Reiff, Henderson, Turko, and Scafede, "individual

defendants", and individual defendants together with the City of Pittsburgh, "defendants"), seeking

summary judgment in their favor with respect to all claims asserted by Richard D. Turzai ("Turzai" or

"plaintiff").  Also pending is a motion for summary judgment (Mot. for Summ. J. against Def. Scafede, ECF No. 27) filed by plaintiff solely against Scafede.  Discovery was phased in this case with the first phase focused on fact discovery relating to the issue whether probable cause existed for two arrests of plaintiff.  The summary judgment motions were filed after the close of the first phase of discovery and relate only to probable cause.

In his complaint filed in this case, Turzai alleged that defendants violated his civil rights and asserted several claims against (1) all defendants under 42 U.S.C. § 1983 (count I) for deprivation of liberty without due process of law, malicious prosecution, and violation of his First Amendment rights, and (2) the individual defendants under Pennsylvania law for malicious prosecution, false arrest, invasion of privacy, and illegal detention.  (Compl., ECF No. 1.)  Jurisdiction over plaintiff's federal question claims is predicated upon 28 U.S.C. § 1331 and 42 U.S.C. § 1983 and supplemental jurisdiction over plaintiff's state law claims is predicated upon 28 U.S.C. § 1367.

For the reasons that follow, the court will grant defendants' motion for summary judgment with respect to all federal question claims because there is no issue of material fact in dispute and defendants are entitled to judgment as a matter of law.  Since plaintiff's federal law claims will be dismissed and because his remaining claims arise under Pennsylvania law, the court will decline to exercise supplemental jurisdiction over those claims.  28 U.S.C. § 1367(c)(1)(3).  In light of the granting of defendants' motion with respect to plaintiff's federal claims, plaintiff's motion for summary judgment with respect to his federal claim against Scafede for malicious prosecution will be denied with prejudice and his state law claims against Scafede will be dismissed without prejudice.

*Background*[1]

On December 23, 2008, plaintiff commenced this lawsuit. (Compl. 1.) Plaintiff's claims arise from his alleged unlawful arrests on May 2, 2006, for stalking, criminal mischief, and criminal trespass and on June 7, 2006, for retaliation against a witness. (Pl.'s Concise Statement of Material Facts ("Pl.'s facts") at 6, 8, ECF No. 30.)

In 2004, Michelle Berard ("Berard") purchased a home at 2311 Larkins Way on the City of Pittsburgh's South Side. (Defendants' Concise Statement of Undisputed Material Facts ("Def.'s facts") 1, ECF No. 26.) Berard's property adjoined plaintiff's property. (Pl.'s facts at 1.) Berard intended to live in the home after completing significant interior and exterior renovations, including altering the rear of the structure by adding a second story, removing a concrete patio, and replacing an old wooden fence. (Pl.'s facts at 1, Def.'s facts at 1.)

At the time Berard purchased her property, there was a wooden stockade fence which separated her backyard from Turzai's yard. (Pl.'s facts at 2.) The fence provided privacy between the two properties and from foot traffic on Larkins Way. (*Id.*) Although only one of the fence's gates was on Berard's property, she tore down the fence and both gates in the spring or summer of 2004. (*Id.*) Berard did not obtain plaintiff's permission or notify him of her intent to tear down the fence. (*Id.*) Plaintiff shouted at Berard claiming that she had taken down his fence. (Def.'s facts at 2.) After the fence was torn down, plaintiff noted on several occasions that third persons entered onto his property and left beer bottles, women's tampons and other trash. (Pl.'s facts at 3.) Plaintiff repeatedly requested that Berard erect a temporary fence for privacy, which Berard did not do. (Pl.'s facts at 2.) A property dispute escalated from there. (Def.'s facts at 2.)

---

[1] Because plaintiff is the nonmoving party against who summary judgment will be evaluated, the background is viewed in the light most favorable to plaintiff. *See Doe v. Cnty. of Ctr., Pa.*, 242 F.3d 446 (3d Cir. 2001).

During the course of her renovations, Berard began construction of a deck which was located at the rear of her house on the side adjacent to plaintiff's property.  (Pl.'s facts at 3.)  In January 2006, Turzai had a survey performed which showed that Berard's new deck extended approximately one inch onto his property.  (*Id.*)  On March 17, 2006, Berard called 911, claiming that Turzai posted a sign on her deck.  (Pl.'s facts at 2.)  Reiff was on duty as a uniformed police officer for the City of Pittsburgh assigned to Zone 3 and responded to Berard's 911 call.  (Pl.'s facts at 3, Def.'s facts at 2.)  Reiff spoke with Berard and received information which he noted in the police report as follows:

> The victim Michelle Berard stated that she owns the property at 2311 Larkins Way. Ms. Berard stated that she does not reside at this location yet but is remodeling it. Ms. Berard stated that for several weeks her neighbor [Richard Turzai] has been harassing her every time she comes to the house.  Ms. Berard stated that the harassing started with low level verbal assaults but has since escalated.  Ms. Berard has not seen the suspect performing the following acts but feels that he is responsible.  Ms. Berard stated that over the past several days when she came to the house she noticed that someone had put several female undergarments on her back deck.  Ms. Berard stated that the suspect also placed several condoms on the rear deck.  Ms. Berard stated on the morning of 3/17/06 she came to the house and noticed that the suspect had nailed a sign stating "No sluts allowed" to a wooden post on her deck.

 (Def.'s facts at 2.)

Reiff did not speak to Turzai.  (Pl.'s facts at 4, Def.'s facts at 2.)  Berard confirmed that the narrative in the police report prepared by Reiff accurately represented the information that she provided him on March 17, 2006.  (Def.'s facts at 3.)  Reiff listed the suspected offense as harassment pursuant to 18 Pa. Con. Stat. § 2709.  (Pl.'s facts at 4.)  Reiff did not conduct any follow-up on Berard's complaint and the case was turned over to plainclothes detectives for possible further investigation. (Def.'s facts at 3.)

On April 11, 2006, Berard again called 911 to complain about Turzai.  (Pl.'s facts at 4, Def.'s facts at 3.)  Turko, a field training officer, and Henderson, a police recruit, were working as uniformed officers in Zone 3 and responded to the call.  (*Id.*)  Turko and Henderson spoke to Berard.  (*Id.*)

Turko and Henderson prepared an investigative report which provided:

> On the listed time and date R/Os responded to 2311 Larkins Way for a Harassment Report. Upon arrival we were met by Victim Berard. She stated that she has been having on going [sic] problems with the neighbor next door. Berard states that the neighbor has thrown condoms and underwear on her property and posted signs on her property. On today's date she showed us a sign that was nailed to her deck that read "Achtung! Verboten no sluts, homos, psychos, weirdos or commode scum allowed."

> R/Os spoke with the next door neighbor, identified as Turzai, Richard. He took credit for the sign nailed to the victim's deck and did not deny throwing items onto her property. Turzai states that he believes the property his neighbor is building on belongs to him. R/Os advised him to stop his behavior and to explain the situation to the Magistrate when court is set.

> R/Os advised the victim keep [sic] sign for court purposes and to go to the Magistrate and file charges for harassment.

(Pl.'s facts at 4, Def.'s facts at 3-4.)

Berard confirmed that the investigative report correctly stated the information she relayed concerning her ongoing dispute with Turzai. (Def.'s facts 4.) She stated in her deposition that she did not consider going to the magistrate to file a complaint against Turzai. (Pl.'s facts 4.) Turko's and Henderson's investigative report was submitted for filing at Zone 3 station. (Pl.'s facts at 4, Def.'s facts at 4.) Turzai and Berard were advised to see the local magistrate and the assistant district attorney assigned to that office to settle their dispute. (*Id.*)

Approximately two weeks after the April 11, 2006, 911 call, Turko, Henderson and another unidentified uniformed officer pushed their way past Turzai and entered his home without his authorization. (Pl.'s facts at 4-5.) Turzai proceeded into his living room to retrieve his identification and was followed by the unknown officer. (Pl.'s facts at 5.) He informed the officers that he had a survey done showing the property lines and that Berard's deck extended approximately one inch onto his property. (Pl.'s Responsive Concise Counterstatement of Material Facts ("Pl.'s Counterstatement") at 2, ECF No. 37.) Turzai admitted to posting a sign that read "Achtung! Verboden. No sluts, homos,

psychos, weirdoes or commode scum Allowed." (Pl.'s facts at 5.) The unknown officer told plaintiff that Berard was upset about the signs and asked him to stop posting the signs. Plaintiff agreed. (*Id.*) The unknown officer stated that Berard would be sending Turzai a letter confirming that he did not intend to put up any more signs. (*Id.*) One of the officers joked with Turzai that they liked his signs. (*Id.*) Plaintiff did not have any further interaction with defendants until his arrest. (*Id.*)

According to the City of Pittsburgh's policy, the investigation of the incidents involving Turzai and Berard was assigned to Bottesch. (Def.'s facts at 5.) In conducting her investigation, Bottesch spoke to Berard, reviewed the reports prepared by Reiff and Turko, interviewed Turzai's neighbors, Mr. and Mrs. Buck, and attempted to interview Turzai on two occasions. (Pl.'s Counterstatement at 2, Def.'s facts at 5.) Bottesch was unsuccessful in speaking to Turzai as there was no response on either occasion that she knocked on his door. (Pl.'s Counterstatement at 4.) She did not leave a card or note or attempt to call Turzai. (*Id.*) Based upon her investigation, Bottesch concluded that Turzai had committed the crimes of stalking, criminal mischief and criminal trespass (as a simple trespasser) and prepared an affidavit of probable cause. (Pl.'s facts at 5-6, Def.'s facts at 5-6.)

On April 27, 2006, Bottesch prepared an investigative report. (Pl.'s facts at 5-6.) The name of Bottesch's partner, Scafede, appears on the report, but Scafede did not participate in the investigation or the writing of the report. (Pl.'s facts at 5.) The investigative report detailed the interactions between Turzai and Berard as follows:

> Michelle Berard stated that her neighbor, Richard Turzai has been harassing her. Berard owns the property at 2311 Larkins Way and is remodeling it. Berard stated that for several weeks during the month of March, when she would got [sic] to 2311 Larkins Way, Turzai would yell at her for no reason. Turzai would state "Fuck you Bitch!", and then spit at her. Since then it has escalated. On 3/17/06 when she came to the house and noticed Turzai had nailed a sign to her rear wooden porch post stating "No sluts allowed"! Turzai also hung a huge blue tarp up on her rear porch that had German writing on it that read "Achtung! Verboten no sluts, homos, psychos, weirdos or commode scum allowed!"

On 4/11/06 Officers Turko and Henderson went to take another report from Berard. This time Turzai nailed two more cardboard signs to her rear deck porch posts. They stated "No assholes, whores or sluts!" "Don't touch the fucking fence"!

That same day the said Officers went to talk to Turzai. Turzai admitted to going on her property and nailing the signs to her deck. Detectives talked to Berard's neighbor, Kim Buck. Buck states that she observed Turzai on two occasions in the month of March pissing on Berard's siding of her house and into the outlets. Buck also observed Turzai nailing the cardboard signs to her deck and blue tarps.

Everytime [sic] that Turzai did these things he trespassed on Berard's property to do so. At no time was he given permission to be on her property.

Estimated damage to Berard's property is approximately $560.00. That is from the damage to her rear deck/posts, siding of her house, outlets.

(Def.'s facts at 6.)

Bottesch listed stalking (18 PA. CON. STAT. § 2709.1); criminal mischief (18 PA. CON. STAT. § 3304) and criminal trespass (as a simple trespasser), (18 PA. CON. STAT. § 3503) as suspected offenses and indicated that a warrant would be sought for Turzai's arrest. (Pl.'s facts at 6.)

On the same day that Bottesch filed her report, April 27, 2006, Berard called the police in response to a new sign on the deck. (Pl.'s facts at 6.) Officer S. Luff responded and spoke to Berard. (Pl.'s facts at 6.) Officer Luff was unable to make contact with Turzai at the time and referred Berard to the magistrate judge in order to file a complaint. (Pl.'s facts at 6.)

An affidavit of probable cause filed on May 2, 2006, set forth the following facts in support of the charges against Turzai:

Between March 1, 2006 [and] April 11, 2006, Michelle Berard stated that her neighbor, Richard Turzai has been harassing her. Michelle Berard owns the property at 2311 Larkins way and is remodeling it. Michelle Berard stated that for several weeks during the month of March, when she would go to 2311 Larkins Way, Richard Turzai would yell at her for no reason. Richard Turzai would state "Fuck you Bitch!", and then spit at her. Since then it has escalated. On 3/17/06 when she came to the house and noticed Richard Turzai had nailed a sign to her rear wooden porch stating "No sluts allowed"! Richard Turzai also hung a huge blue tarp up on her rear porch that had German writing on it that read "Achtung! Verboten no sluts, homos, psychos, weirdos or commode scum allowed!"

On 4/11/06 Officers Turko and Henderson went to take another report from Berard. This time Turzai nailed two more cardboard signs to her rear deck porch posts. They stated "No assholes, whores, or sluts!" "Don't touch the fucking fence"! That same day the said Officers went to talk to Turzai. Turzai admitted to going on her property and nailing the signs to her deck.

Detectives talked to Berard's neighbor, Kim Buck. Buck states that she observed Turzai on two occasions in the month of March exposing his penis, pissing on Michelle Berard's siding of her house and into the outlets. Kim Buck also observed Richard Turzai nailing the cardboard signs and blue tarps to her deck.

Every time that Richard Turzai did these things he trespassed on Michelle Berard's property to do so. At no time was he given permission to be on her property.

Estimated damage to Berard's property is approximately $560.00. That is from the damage to her rear deck/posts, siding of her house, outlets.

(May 2, 2006 Probable Cause Affidavit, ECF No. 29-5.)

The affidavit was forwarded to an assistant district attorney who approved the charges without changes. (Pl.'s facts at 5-6, Def.'s facts at 5.) The affidavit was reviewed and an arrest warrant was issued by a magistrate judge without change. (Pl.'s facts at 6, Def.'s facts at 7.) Turzai was arrested without incident on May 2, 2006, and charged with stalking, criminal mischief, and criminal trespass (as a simple trespasser), based upon the arrest warrant obtained by Bottesch. (Pl.'s facts at 6.)

On May 10, 2006, a preliminary hearing was held in *Commonwealth v. Richard D. Turzai*, Allegheny County Court of Common Pleas, Docket Number CC200611560, on the charges of criminal stalking, criminal trespass (as a simple trespasser), and criminal mischief. (Pl.'s facts at 6, Def.'s facts at 9.) The magistrate judge held the charges for court. (Def.'s facts at 7.) The magistrate judge also issued a "No Contact Order" between Turzai and Berard. (Pl.'s facts at 6, Def.'s facts at 7.) Turzai spent twelve days in jail before he posted bond on May 14, 2006. (Pl.'s facts at 6.) Following the preliminary hearing, there was a second review of the charges by an assistant district attorney. (Def.'s facts at 7.) No charges were amended or dropped. (Def.'s facts at 7.)

On May 14, 2006, the day Turzai posted bond, he returned home, entered his residence and saw Berard arrive. (Pl.'s facts at 7.) Later the same day, Turzai's sister, Constance Patterson ("Patterson"), arrived. (*Id.*) While Turzai and Patterson were in the alleyway looking at the property line as shown on the survey, Berard exited her home from the kitchen door and demanded to know how and why Turzai had been released from jail. (*Id.*) Turzai responded by stating that Berard was a liar and that Berard's deck was on his property. (*Id.*)

Berard called the Zone 3 station to speak to Bottesch about the incident. (Pl.'s facts at 7, Def.'s facts at 7.) Because Bottesch was on vacation, Berard spoke with Scafede. (Pl.'s facts at 7, Def.'s facts at 7.) Berard informed Scafede that she had been in her yard with a handyman, James Novak ("Novak"), when plaintiff and his sister appeared and began to berate her. (Def.'s facts 8.) According to Berard, Turzai pointed at her and told her that she was going to regret moving there and that she would regret that she bought the property. (Def.'s facts at 8.) Berard relayed that Turzai stated that she was a "fucking liar" and "despicable" and she could not have him thrown in jail. (Def.'s facts at 8.) Following this conversation, Scafede spoke to Novak. (Def.'s facts at 8.) Scafede did not attempt to contact Turzai during her investigation. (Pl.'s facts at 8.) Scafede contacted the magistrate judge who issued the "No Contact Order" between Turzai and Berard. (Pl.'s facts at 7, Def.'s facts at 8.) The magistrate judge told Scafede to obtain a warrant for Turzai. (*Id.*) Scafede testified that prior to filing the affidavit of probable cause, on May 12, 2006, she was contacted by Turzai's brother, William Turzai, who wanted to "302"[2] his brother. (Scafede Dep. 32-35.) According to Scafede, "he said that

---

[2] An involuntary commitment ("a 302") is described as follows:

An involuntary commitment is an application for emergency evaluation and treatment for a person who is dangerous to themselves or others due to a mental illness. Dangerousness is determined based on the following criteria:

Richard was off his medication, that he was drinking heavily and that he had weapons in the house."

(Scafede Dep. 32.) Scafede testified that this information caused her to be concerned for Berard.

(Scafede Dep. 35.) Scafede spoke to Turzai's neighbor, Robert Buck, on May 16, 2006. (Scafede Dep.

36-37.)

After consulting the crimes code, Scafede prepared an affidavit of probable cause charging

plaintiff with retaliation against a witness and submitted it to an assistant district attorney. (*Id.*) In the

affidavit of probable cause Scafede stated:

---

- Danger to self shall be shown by establishing that within the previous 30 days:
  - the person would be unable without the care, supervision and assistance of others to satisfy his/her need for nourishment, personal or medical care, shelter or self protection or safety and that death or serious physical debilitation would occur within 30 days unless treatment was provided; the person has attempted suicide or the person has made threats to commit suicide and committed acts in furtherance of the threats; or
  - the person has attempted suicide or the person has made threats to commit suicide and committed acts in furtherance of the threats; or
  - the person has mutilated himself/herself or the person has made threats to mutilate themselves and committed acts in furtherance of the threats.
- Danger to others shall be shown by establishing that within the previous 30 days the person has inflicted or attempted to inflict serious bodily harm on another or has threatened serious bodily harm and has committed acts in furtherance of the threat to commit harm to another.

Because this commitment is involuntary it may require the assistance of family, crisis professionals, police, ambulance and any other person involved in the crisis.

In every 302 a petitioner is required to sign the 302 and appear at a hearing if necessary. A petitioner must have first-hand knowledge of the dangerous conduct and be willing to go to an emergency room or the Office of Behavioral Health (OBH) to sign the 302 form.

Allegheny County, Voluntary and Involuntary Commitment of Persons During a Mental Health Crisis, Allegheny County Department of Human Services, http://www.alleghenycounty.us/dhs/commitment.aspx/ (last visited Feb. 10, 2011).

At a City Court hearing on 5-20-06 Richard Turzai was ordered to undergo a mental evaluation by the Behavioral Clinic in the ACJ before being released on bond. Mag. McLaughlin also ordered Turzai to have no contact with the victim, Michelle Berard. This paperwork is in the court folder. On 5-24-06 Berard went to her backyard with James Novak to work. Turzai came outside with his sister. Turzai told Berard her porch was on his property. Berard ignored him and Turzai's sister asked Berard if she was putting up a fence. Turzai told Berard "That's my fence. I've been painting it for 20 fucking years." Turzai pointed at Berard and called her a "fucking liar." He then told Berard "You can't have me thrown in jail and get away with it." Turzai then told Berard she was going to regret moving there. Turzai's sister told Berard she was going to be sorry she bought the property. Turzai then screamed at Berard "You're fucking despicable." Berard stated she is afraid of Turzai and fears he may do bodily harm to her.

(Pl.'s facts at 7-8, Def.'s facts at 8.)

The affidavit was approved by an assistant district attorney and was taken to a City Court magistrate judge where it was approved and an arrest warrant was issued on May 19, 2006. (Pl.'s facts at 9, Def.'s facts at 9.) Turzai was arrested at his home pursuant to the warrant and charged with retaliation against a victim or witness (18 PA. CON. STAT. ANN. § 4953). (Pl.'s facts at 8.) Turzai spent an additional six days in jail for this second arrest. (Excerpts from the Dep. Tr. of Richard Turzai, Pl.'s Ex. L (ECF No. 29-13) at 41-42).

On January 24, 2007, a bench trial on the charge of criminal trespass (as a simple trespasser), was held in the Court of Common Pleas of Allegheny County. (Pl.'s facts at 6, Def.'s facts at 9.) The assistant district attorney did not present Berard's property survey during the trial. (Def.'s facts at 9.) At the conclusion of the presentation of the case, the trial judge remarked:

Unfortunately, I don't have a basis for determining whether in fact this post was on her property or on his property. That is really unfortunate because Mr. Turzai, I find your conduct here to be offensive and deplorable. I do believe that you intended to annoy her if nothing else, and your language, for a person who intends to live in this neighborhood is certainly inflammatory. I would have been offended if I were your neighbor. Nevertheless, I can't find under the law that this is simple trespass because I'm not in a position to evaluate the surveys and make a determination based on the evidence before me today.

(*Id.*)  The trial judge found Turzai not guilty of the charge of trespass.  (Pl.'s facts at 6, Def.'s facts at 9.)  The charges of stalking and criminal mischief were dismissed on demurrer.  (*Id.*)

A preliminary hearing was held on June 13, 2006, six days following Turzai's second arrest, on the charge of retaliation against a witness, in *Commonwealth v. Richard D. Turzai*, Magisterial District Judge 05-0-03, Docket Number: CR-00581-06.  (Def.'s facts at 9.)  The charge was dismissed.  (*Id.*)

### *Standard of Review*

Federal Rule of Civil Procedure 56 provides in relevant part:

> **(a.) Motion for Summary Judgment or Partial Summary Judgment.**
>
> A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  The court should state on the record the reasons for granting or denying the motion.
>
> …
>
> **(c) Procedures.**
>
> > **(1)** *Supporting Factual Positions*. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> >
> > > **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> > >
> > > **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

FED. R. CIV. P. 56(a), (c)(1).

> Rule 56 of the Federal Rules of Civil Procedure "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an

> element essential to that party's case, and on which that party will bear the
> burden of proof at trial."

*Marten v. Godwin*, 499 F.3d 290, 295 (3d Cir. 2007) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

An issue of material fact is in genuine dispute if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); s*ee also Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) ("A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof.") (citing *Anderson*, 477 U.S. at 248; *Celotex Corp.*, 477 U.S. at 322-23). The United States Supreme Court

> emphasized, "[w]hen the moving party has carried its burden under Rule 56(c), its
> opponent must do more than simply show that there is some metaphysical doubt
> as to the material facts . . . . Where the record taken as a whole could not lead a
> rational trier of fact to find for the nonmoving party, there is no genuine issue for
> trial."

*Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

In deciding a summary judgment motion, a court must view the facts in the light most favorable to the nonmoving party and must draw all reasonable inferences, and resolve all doubts in favor of the nonmoving party. *Doe*, 242 F.3d at 446; *Woodside*, 248 F.3d at 130; *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 151 (3d Cir. 1999). A court must not engage in credibility determinations at the summary judgment stage. *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 643 n.3 (3d Cir. 1998).

### *Discussion*

In moving for summary judgment, defendants argue: (1) plaintiff failed to show a genuine issue of material fact with respect to his claims that his constitutional rights were violated; (2) all individual defendants are entitled to qualified immunity; and (3) plaintiff failed to establish an issue of material

fact with respect to alleged liability of the City of Pittsburgh pursuant to 42 U.S.C. § 1983.  (Def.'s Br. in Support of Joint Mot. for Summ. J., ECF No. 24.)  Turzai filed a motion for summary judgment in which he argues that he is entitled to summary judgment against Scafede on his federal and state malicious prosecution claims because there was no probable cause for his arrest for retaliation against a witness.  (Mem. of Law in Support of Pl.'s Mot. for Summ. J. against Def. Scafede, ECF No. 28.)

Turzai did not adduce sufficient evidence to establish a genuine issue of material fact with respect to his claims for malicious prosecution, violation of the First Amendment of the United States Constitution, and deprivation of liberty without due process of law raised in count I of his complaint and summary judgment must be granted in favor of defendants with respect to those claims.  Because there are no federal claims remaining in this case, the court will decline to exercise supplemental jurisdiction over plaintiff's pendent state law claims raised in count II of his complaint.  By reason of the disposition of those claims, plaintiff's motion for summary judgment with respect to his federal claim against Scafede for malicious prosecution is denied with prejudice and with respect to his state law claim against Scafede will be denied without prejudice.  The federal claims will be discussed in this opinion.

## I.    No Genuine Issues of Material Fact with respect to Plaintiff's Malicious Prosecution Claims

42 U.S.C. § 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

The essential elements of a claim brought under § 1983 include: (1) deprivation of a "federal right;" (2) by a "person;" and (3) acting "under color of" state law.  *Haywood v. Drown*, 129 S. Ct. 2108 (2009).

A plaintiff cannot recover under § 1983 without establishing an underlying violation of a federal constitutional or statutory provision. *See Cnty. of Sacramento v. Lewis*, 523 U.S. 833 (1998). Here, Turzai alleges that defendants violated his rights under the First and Fourteenth Amendments to the United States Constitution. (Compl.) Plaintiff premises his 42 U.S.C. § 1983 claim for malicious prosecution on an alleged violation of the Fourteenth Amendment. (Compl.) Plaintiff alleges that defendants, individually and in a conspiracy with each other, instituted "charges against him without probable cause and with malice, vengeance, and bias such that [he] was maliciously prosecuted for crimes which he did not commit and which these Defendants knew or should have known that he did not commit." (Compl. 5.) The individual defendants contend that the arrests of Turzai were based upon probable cause and that they are protected from liability because the charges listed in the affidavits of probable cause were approved on subsequent arrest warrants signed by an impartial magistrate judge. (Def.'s Br. in Support of Joint Mot. for Summ. J.) The Fourteenth Amendment provides:

> All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. CONST. amend. XIV, § 1.

In *Albright*, the Supreme Court held that "it is the Fourth Amendment, and not substantive due process, under which petitioner Albright's [malicious prosecution] claim must be judged." 510 U.S. at 271 (stating a reluctance to expand the principles of substantive due process and holding that a right to be free from prosecution without probable causes exists under the Fourth Amendment, which has "relevance to the deprivations of liberty that go hand in hand with criminal prosecutions."). *Albright*, 510 U.S. at 274. While the United States Court of Appeals for the Third Circuit has held that the

*Albright* opinion should be read narrowly and does not require "that a malicious prosecution claim can only be based [on] a Fourth **Amendment** violation," it does appear that malicious prosecution claims cannot be brought under a theory of substantive due process. *Torres*, 163 F.3d at 173 ("Accordingly, a section 1983 **malicious** prosecution claim may also include police conduct that violates the Fourth **Amendment**, the procedural due **process** clause or other explicit text of the Constitution."); s*ee Perkins v. Staskiewicz*, Civ. Act. No. 1:CV-08-1651, 2009 WL 693176, at *2 (M.D. Pa. Mar. 13, 2009) ("Plaintiff does not allege facts upon which the Court could, even if not waived, find a procedural due process violation. Therefore, because Plaintiff . . . cannot bring a § 1983 malicious prosecution claim under the substantive due process provision of the **Fourteenth Amendment,** Plaintiff's § 1983 Fourteenth Amendment claim is dismissed.").

A plaintiff bringing a malicious prosecution claim generally alleges a violation of his or her Fourth Amendment or procedural due process rights. *See Albright v. Oliver*, 510 U.S. 266, 273-74 (1994). The United States Court of Appeals for the Third Circuit explained that a § 1983 malicious prosecution claim could be based on a constitutional provision other than the Fourth Amendment, including the procedural component of the Due Process Clause, so long as it was not based on substantive due process. *Torres v. McLaughlin*, 163 F.3d 169, 172 (3d Cir. 1998). Analysis of a malicious prosecution claim arising under 42 U.S.C. § 1983 must begin with a determination of whether a constitutional violation exists. *Olasz v. Welsh*, 301 F. App'x 142 (3d Cir. 2008).

Here, Turzai did not articulate a basis for a procedural due process claim or adduce any facts which would support such a theory. Plaintiff's allegations implicate malicious prosecution under the Fourth Amendment. (Compl. 5.) Plaintiff's claims for malicious prosecution are considered to be brought under the Fourth Amendment, which is applicable to the states through the Fourteenth Amendment. *Mapp v. Ohio*, 367 U.S. 643 (1961); *Walmsley v. Phila.*, 872 F.2d 546 (3d Cir. 1989).

To be successful on a claim for malicious prosecution a plaintiff must prove: (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the defendant initiated the criminal proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceedings. *Johnson v. Knorr,* 477 F.3d 75, 81-82 (3d Cir. 2007). The threshold issue in malicious prosecution claims under 42 U.S.C. § 1983 is the existence of probable cause. *Groman v. Twp. of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995). Probable cause is determined by an objective test based on the facts available to the officers at the time of the arrest. *Barna v. City of Perth Amboy*, 42 F.3d 809, 819 (3d Cir. 1994). Probable cause for arrest exists when the facts and circumstances are sufficient to warrant a reasonable person to believe that an offense had been or is being committed by the person who is being arrested. *United States v. Cruz*, 910 F.2d 1072, 1076 (3d Cir. 1990). The existence of probable cause does not depend upon the ultimate determination of guilt or innocence. *Orsatti v. New Jersey State Police*, 71 F.3d 480, 483 (3d Cir. 1995). There are two federal claims for malicious prosecution raised in this case: 1) for the arrest on the charge of retaliation against a witness, and 2) for the arrest on the charge of criminal trespass (as a simple trespasser), stalking and criminal mischief. The issue of probable cause with respect to each of those claims will be addressed.

### a. Probable Cause to Arrest Plaintiff for Retaliation Against a Witness

Plaintiff alleges that Scafede maliciously prosecuted him and deprived him of liberty without due process of the law in violation of the Fourteenth Amendment by filing an affidavit of probable cause seeking to charge him with retaliation against a witness. The Pennsylvania crime of retaliation against witness, victim, or party is set forth in section 4953 of the Pennsylvania Consolidated Statutes:

> A person commits an offense if he harms another by any unlawful act or engages
> in a course of conduct or repeatedly commits acts which threaten another in

retaliation for anything lawfully done in the capacity of witness, victim or a party in a civil matter.

18 PA. CON. STAT. § 4953. The charge applies to retaliation against victims and witnesses in both civil and criminal cases. *Commonwealth v. Penn,* 562 A.2d 833 (Pa. Super. Ct. 1989); s*ee Commonwealth v. Ostrosky*, 909 A.2d 1224 (Pa. 2006).

On May 15, 2006, Berard called Bottesch to complain about a verbal exchange that took place between Turzai and her. (Pl.'s facts at 7, Def.'s facts at 9.) Bottesch, however, was out of the office, and Berard spoke to Bottesch's partner, Scafede. (Pl.'s facts 7.) Scafede testified that Berard told her that a handyman and Berard were outside in her yard when Turzai and his sister began to question Berard about what she was doing on her property. (Scafede Dep. 16, Feb. 22, 2010, ECF No. 29-17.) According to Scafede, Berard told her that "Mr. Turzai began pointing at her and telling her that she is going to regret moving there, she's going to regret she bought the property. He told her that she was a fucking liar and you can't have me thrown in jail. You are despicable." (*Id.*) Turzai responded to Berard's demand to know why he was out of jail by calling her a liar and telling her that her deck was on his property. (Pl.'s facts at 7.) Following her conversation with Berard, Scafede spoke with Berard's handyman, Novak. (Scafede Dep. at 17.) Scafede did not follow-up with Turzai. (*Id.*)

Scafede spoke with the magistrate judge who issued the no contact order between Berard and Turzai. (*Id.*) The magistrate judge told Scafede to obtain a warrant. (*Id.*) The magistrate judge did not specify a charge. (Scafede Dep. At 18.) Scafede consulted the crimes code and typed an affidavit of probable cause and submitted it to an assistant district attorney. (Scafede Dep. at 18-19.)

Scafede's investigation uncovered facts sufficient to warrant a reasonable officer to believe that Turzai committed the crime of retaliation against a witness. *Cruz*, 910 F.2d at 1076. Scafede's affidavit of probable cause detailed an interaction among Turzai, his sister, Berard and Novak during which Turzai allegedly told Berard, "you can't have me thrown in jail and get away with it." (Pl.'s

facts at 7-8.)  Scafede testified that she was basing the affidavit on Turzai's "continuous course of conduct for a few months," which was confirmed by her review of prior police reports and conversations with Berard and other witnesses.  (Scafede Dep. 21.)  To Scafede's knowledge, the no contact order applied both to Berard and Turzai.  (Pl.'s Counterstatement 3.)  Scafede stated that in her opinion, regardless of who initiated conduct, "no contact means no contact whatsoever."  (Scafede Dep. 24.)  The totality of the circumstances, including the interaction described in Scafede's affidavit and the reference in the affidavit to the court order and other paper work in the court folder, supports a reasonable inference that there was a continuing course of action involving Turzai threatening Berard for lawfully calling law enforcement after their ongoing property dispute.   (Pl.'s facts at 7-9.)

Turzai argues that his arrest for retaliation against a witness is not supported by probable cause because Scafede's affidavit does not include any statements that he "repeatedly" committed threatening acts as required by the statute.  (Mem. of Law in Support of Pl.'s Mot. for Summ. J. against Def. Scafede, at 15-16.)  The United States Court of Appeals for the Third Circuit has cautioned that "[t]he probable cause determination is to be made only after considering the totality of the circumstances, which requires courts to consider the cumulative weight of the information set forth by the investigating officer in connection with reasonable inferences that the officer is permitted to make based upon the officer's specialized training and experiences."  *United States v. Yusuf*, 461 F.3d 374, 390 (3d Cir. 2006) (citing *United States v. Arvizu*, 534 U.S. 266, 275 (2002)).  It is clearly established that "[p]robable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction."  *Adams v. Williams*, 407 U.S. 143, 149 (1972) (citing *Draper v. United States*, 358 U.S. 307, 311-12 (1959)).  Turzai's reliance on the Pennsylvania Supreme Court's discussion of the elements required for **proving** a charge of retaliation is misplaced.  *See Ostrosky*, 909 A.2d at 1224.

Indeed, the United States Court of Appeals for the Third Circuit has emphasized that probable cause determinations should not be overly compartmentalized. *Yusuf*, 461 F.3d at 390. For probable cause to exist, Scafede did not need proof of each element of the crime of retaliation against a witness. Instead, only the reasonable belief that plaintiff probably committed the offense is required. *Thacker v. City of Columbus*, 328 F.3d 244, 256 (6th Cir. 2003). Here, Scafede wrote an affidavit of probable cause based upon an unsolicited 911 call from Berard, other police reports and Scafede's conversations with Berard, William Turzai, the Bucks, Novak, and the magistrate judge. These conversations described plaintiff's ongoing threatening course of conduct toward Berard and her fear of his future actions.

Despite plaintiff's argument that the affidavit is not supported by probable cause because there was not a "continuous course of conduct" (Mem. of Law in Support of Pl.'s Mot. for Summ. J. against Def. Scafede 15) and no mention of "repeated encounters" as required by the statute, "[t]he absence of evidence with respect to a particular element . . . does not eliminate the existence of probable cause, assuming that the totality of the circumstances are such that a reasonable inference with respect to the existence of a particular element can be made." *Gagliardi v. Fisher*, 513 F.Supp. 2d 457 (W.D. Pa. 2007). The totality of the circumstances, including police reports documenting an ongoing property dispute between plaintiff and Berard, as well as Scafede's conversations with Berard, William Turzai, the Bucks, Novak, and the magistrate judge led to the reasonable conclusion that plaintiff probably committed the crime of retaliation against a witness. As such, because there was "a reasonable basis sufficient to satisfy the Fourth Amendment" to believe that under the circumstances Turzai had committed the crime charged, there was probable cause to arrest him for retaliation against a witness. *Samos Intex Corp. v. Nextel Comm., Inc.*, 194 F.3d 301, 303 (1st Cir. 1999); *see Gagliardi*, 513 F.Supp.21d at 480 (citing *Johnson v. Campbell*, 332 F.3d 199, 211 (3d Cir. 2003)).

Finally, plaintiff points to his not being held for trial at the preliminary hearing before the magistrate judge to argue that there was no probable cause to arrest him. (Reply to Def. Georgette Scafede's Opp'n to Pl.'s Mot. for Summ. J. 4.) A dismissal, however, is not probative of any alleged malicious prosecution because

> innocence of the charge contained in the warrant, while relevant to a tort claim of false imprisonment in most if not all jurisdictions, is largely irrelevant to his claim of deprivation of liberty without due process of law. The Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted -- indeed, for every suspect released. . . . "Due Process does not require that every conceivable step be taken, at whatever cost, to eliminate the possibility of convicting an innocent person."

*Baker v. McCollan*, 443 U.S. 137, 144 (1979) (quoting *Patterson v. New York*, 432 U.S. 197, 208 (1977) (footnote omitted).

Plaintiff did not show a genuine issue of material fact exists to support his conclusion that "it is plainly apparent that Scafede maliciously arrested plaintiff for retaliation pursuant to § 4953 because she recklessly concluded in error that plaintiff violated an illegal 'no contact order.'" (Reply to Def. Georgette Scafede's Opp'n to Pl.'s Mot. for Summ. J. 9.) Scafede's conclusion that plaintiff had probably committed the crime of retaliation against a witness was reasonable based upon the facts and circumstances known to her. The evidence adduced does not support a claim against Scafede for malicious prosecution because probable cause existed. Scafede is entitled to judgment as a matter of law and summary judgment will be granted against Turzai and in favor of Scafede.

**b. Probable Cause to Arrest Plaintiff for Criminal Trespass (as a Simple Trespasser), Stalking, and Criminal Mischief**

The relevant inquiry is whether based upon the facts available to the individual defendants at the time of their police investigations, a reasonable officer would believe Turzai had committed the offenses of criminal trespass (as a simple trespasser), stalking, and criminal mischief and probable cause therefore existed for the arrest of plaintiff on those charges. In order to evaluate probable cause

within the malicious prosecution context, the court must look individually at each charged offense. *Johnson*, 477 F.3d at 85.  In order to give context to this issue, the court will first consider each individual defendant's conduct.

### (i) Individual defendants

#### (1) <u>Reiff</u>

With respect to these charges, Reiff responded to the first 911 call made and spoke with Berard. (Pl.'s facts at 3, Def.'s facts at 2.)  Berard confirmed that she told Reiff  that Turzai had been harassing her every time she came to the property for several weeks with "low-level verbal assaults." (Berard Dep. 70-72.)  Berard complained to Reiff about a sign which was nailed to a wooden post on her deck which read "No sluts allowed."  (Berard Dep. 71-72.)  Berard told Reiff that Turzai had placed condoms and women's underwear on her deck.  (Berard's Dep. 71, Pl.'s facts at 3.)  She admitted to Reiff that she had not seen Turzai place any items on her deck.  (Pl.'s facts at 3.)  Turzai admitted to posting the sign.  (*Id.*)  He denied putting any other items on the deck.  (*Id.*)

Reiff testified that he attempted to speak with Turzai by knocking on Turzai's door, but there was no answer.  (Def.'s facts 2, Reiff's Dep. 18.)  Turzai denied speaking with Reiff.  (Pl.'s Counterstatement 2.)  Reiff prepared a police report.  (Pl.'s facts  at 3.)

Reiff's only actions in the present case were to respond to a 911 call placed by Berard and to prepare a police report.  (Pl.'s facts at 3.)  Turzai's allegations with respect to Reiff are that Reiff did not question him and that Reiff was friends with Officer O'Neill, "the individual Berard was dating at the time and [he] had met Berard on a prior occasion." (Pl.'s facts at 4.)  The police report prepared by Reiff reflects Berard's version of events as told to Reiff.  (Def.'s facts at 3.)  Turzai did not adduce evidence of any actions taken by Reiff that could reasonably be seen to have violated Turzai's constitutional rights.

### (2) **Turko and Henderson**

Turko and Henderson responded to the second 911 call placed by Berard. (Def.'s facts at 3.) The officers spoke to Berard about why she had called 911. Berard testified that she told Turko and Henderson that she was having ongoing problems with Turzai. (Berard Dep. 73-74.) Berard told Turko and Henderson that Turzai had thrown condoms and underwear on Berard's property and posted signs on her property. (Berard Dep. 74.) Berard relayed that there was a sign nailed to her deck that read "Achtung, verboten, no sluts, homos, psychos, weirdoes, or commode scum allowed." (*Id.*) Turko testified that he told Berard to keep the sign because "it looked like it was nailed to her property . . . . because the deck was connected to her house." (Turko Dep. 27, [no date provided], ECF No. 35-2.)

Henderson spoke with Turzai. (Pl.'s facts at 4-5, Def.'s facts at 3.) Following the conversations with Berard and plaintiff, Turko and Henderson wrote a police report. (Def.'s facts at 3-4.) Berard confirmed that the police report contained her version of events which she relayed to Turko and Henderson. (Berard Dep. 74-76, Apr. 29, 2010, ECF No. 29-12.) All applicable investigative reports were submitted for filing at the Zone 3 station. (Def.'s facts at 4.) Turzai did not adduce any facts that would lead a reasonable fact-finder to conclude that Turko or Henderson maliciously prosecuted him.

### (3) **Bottesch**

According to City of Pittsburgh Police policy, uniformed officers respond to calls from the radio and they take reports. (Scafede Dep. 6.) These police reports are submitted to the chain of command and if the commander or lieutenant decides that the case warrants further investigation, the case will be assigned to a detective for further investigation. (Scafede Dep. 6, 12.) Here, Bottesch, a detective, was assigned to the case and began an investigation by reviewing the previous police reports.

(Pl.'s facts at 5-6, Def.'s facts at 5.)  Bottesch testified that she spoke to plaintiff's neighbors, Mr. and

Mrs. Buck, who told her that they observed plaintiff urinating on Berard's siding and the outlets on the

side of her house, posting the signs, and putting a tarp on Berard's porch.  (Bottesch Dep. 31-32.)

Bottesch attempted to interview plaintiff on two occasions, but there was no response at his

residence.  (Bottesch Dep. 50, Def.'s facts at 5.)  Based upon this investigation which consisted of

speaking to Berard, the Bucks, and at the minimum, reviewing the police reports filed by Reiff, Turko

and Henderson, Bottesch concluded that plaintiff had committed the crimes of criminal trespass (as a

simple trespasser), stalking and criminal mischief.  (Def.'s facts at 5.)  Probable cause with respect to

each crime will be considered.

**(ii.)  Criminal Trespass (as a simple trespasser)**

Turzai argues that there was no probable cause to arrest him for criminal trespass (as a simple

trespasser), because a survey of the property established that portions of the property dispute occurred

on his property, not Berard's property.  Under Pennsylvania law, simple trespass is described in

relevant part as follows:

> § 3503.  Criminal Trespass
> . . .
> (b.1)  Simple Trespasser. --
> (1) A person commits an offense if, knowing that he is not licensed or privileged to do so, he
> enters or remains in any place for the purpose of:
> . . .
> iii. defacing or damaging the premises.

18 PA. CON. STAT.  § 3503(b.1)(1).

Plaintiff's sole contention with respect to the charge of simple trespass is that defendants "failed

to perform a survey of the real estate in question and failed to produce any evidence that [he] trespassed

on the property of Ms. Berard, despite [his] repeated requests for such testing to demonstrate his

innocence."  (ECF No. 1, 5.)  Once police establish probable cause, as here, the police are neither

required to investigate independently "every claim[] of innocence nor compelled by the Constitution to perform an error-free investigation of such a claim." *Baker v. McCollan*, 443 U.S. 137, 145-46 (1979). During the course of her investigation, Bottesch was informed by several parties that Turzai had entered onto Berard's property, at least two times, without Berard's permission to post signs on Berard's deck. The circumstances known to Bottesch at the time would warrant a reasonable officer to believe that it was more likely than not that plaintiff had committed the crime of simple trespass. The decision to charge plaintiff with criminal trespass (as a simple trespasser), was supported by probable cause and the individual defendants were not constitutionally required to investigate the properties' boundary lines prior to plaintiff's arrest.

**(iii.) Stalking**

Under the Pennsylvania Crimes Code, the crime of stalking is:

§ 2709.1 Stalking

(a)     **Offense defined.** -- A person commits the crime of stalking when the person either:

(1)     engages in a course of conduct or repeatedly commits acts toward another person, including following the person without proper authority, under circumstances which demonstrate either an intent to place such other person in reasonable fear of bodily injury or to cause substantial emotional distress to such other person; or

(2)     engages in a course of conduct or repeatedly communicates to another person under circumstances which demonstrate or communicate either an intent to place such other person in reasonable fear of bodily injury or to cause substantial emotional distress to such other person.

18 PA. CON. STAT. § 2709.1(a). Plaintiff alleges that the charge of stalking was not supported by probable cause because defendants "produced no evidence of [his] alleged intent to commit this crime." (ECF No. 1, 5.) Based upon the circumstances available to Bottesch at the time of her investigation, probable cause existed to charge plaintiff with stalking because under the facts know to Bottesch a

reasonable officer could be warranted in believing that it was more likely than not that plaintiff had committed the crime.

During the course of her investigation, Bottesch learned about facts and circumstances which would have led a reasonable detective to believe that plaintiff's actions caused Berard to be in reasonable fear of bodily injury or to have caused her emotional distress. During her investigation, Bottesch reviewed the police reports prepared by Reiff, Turko, and Henderson. Berard testified that the police reports contained the description of events about which she informed the officers. (Berard Dep. 70-77.) Berard testified that according to her personal knowledge, the police reports were correct. (Berard Dep. 77.) The police reports outlined an ongoing and escalating property dispute during which, by his own admission, plaintiff had posted signs which could reasonably be viewed as intending to cause Berard "substantial emotional distress."

Berard testified that she told the individual defendants about two incidents, not included in the police reports or affidavits, during which plaintiff verbally assaulted her and spit at her. (Berard Dep. 62-63.) Berard testified that she did not feel as if the police were doing enough to stop the ongoing harassment. (Berard Dep. 48.) While the police reports and Bottesch's affidavit of probable cause do not specifically mention Berard's emotional distress, she testified that she "express[ed] concerns about being at home by [her]self, being at that house by [her]self doing work there, with [plaintiff's] behavior not only continuing, but escalating." (Berard Dep. 95.) Bottesch testified that she determined that plaintiff had placed Berard in fear of bodily injury or in fear of her life "when [Berard] told me that she was afraid to go over there. After he spit at her, she said that she was afraid to go over there by herself." (Bottesch Dep. 59.) Bottesch testified that Berard told her that she was afraid of plaintiff and that Berard was very upset and was crying. (Bottesch Dep. 60.)

Bottesch included stalking as a charge in her affidavit because she believed that "it was an ongoing episode." (Bottesch Dep. 74.)   In light of the circumstances known to Bottesch at the time she wrote her affidavit, there was probable cause to seek a charge of stalking.  *See Yusuf*, 461 F.3d at 390. Plaintiff did not show a genuine issue of material fact exists with respect to the probable cause for his arrest for stalking.

### (iv.)  Criminal Mischief

Under relevant Pennsylvania law criminal mischief is described:

18 PA. CON. STAT. § 3304. *Criminal Mischief*

(a)  Offense defined.—A person is guilty of criminal mischief if he:
. . .
(5) intentionally damages real or personal property of another . . . .

18 PA. CON. STAT. § 3304(a).  Plaintiff attacks the probable cause for the charge of criminal mischief on the ground that there are no electrical outlets on Berard's property on the side adjacent to Turzai's property, and therefore, there could not have been any witness statements that he was seen urinating into outlets on Berard's house.  Plaintiff seems to be arguing that the Bucks were lying to Turko and Henderson, who set forth in the police report that Kim Buck stated "she observed Turzai on two occasions in the month of March pissing on Berard's siding of her house and into the outlets.  Buck also observed Turzai nailing the cardboard signs to her deck and blue tarps."  (Apr. 27, 2006 Police Report Issued by Detective Robyn Bottesch and Detective Georgette Scafede, Pl.'s Ex. C (ECF No. 29-3) at 2.)  Turzai does not adduce any evidence that the individual defendants should have known that the Bucks were lying about their observations.  It is noteworthy that Kim Buck's statement did not refer to the side of Berard's property adjacent to Turzai's property.  Under the circumstances and information available to Turko, Henderson, and Bottesch, the information available to them would not have caused them to question the veracity of Berard's and the Bucks' statements to the officers.

Indeed, the Buck's statements were corroborated by Berard. (*See* Bottesch Dep. 91 (Berard relayed to Bottesch that her contractor had to replace "a couple of pieces of siding and the outlets.").) Turzai did has not show that Bottesch should have reason to doubt the reliability of the Bucks' statements at the time that they were made and the relevant affidavit was filed. Based upon the information relayed by Berard and the Bucks, a reasonable officer would be warranted in believing that plaintiff, more probably than not, committed the crime of criminal mischief by his alleged actions. *See Samos*, 194 F.3d at 303. The decision to charge plaintiff with criminal mischief is supported by probable cause. *Id.*

### c. Bottesch's and Scafede's Affidavits of Probable Cause Were Approved by and Signed by a Magistrate Judge

Bottesch's affidavit of probable cause seeking to charge plaintiff with criminal trespass (as a simple trespasser), criminal mischief, and stalking was approved without change by an assistant district attorney and an arrest warrant on these charges was signed by a magistrate judge. (Def.'s facts at 6-7.) Scafede's affidavit of probable cause seeking to charge plaintiff with retaliation against a witness was also signed by a magistrate judge. (*Id.* at 6-7, 25-27, 133) While these facts alone do not shelter the individual defendants from liability for malicious prosecution, plaintiff has an additional burden. *Wilson v. Russo*, 212 F.3d 781, 786 (3d Cir. 2000).

In order to succeed in an action brought under 42 U.S.C. § 1983 for malicious prosecution made pursuant to an arrest warrant, a plaintiff must show, by a preponderance of the evidence: (1) that the officer knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that created a falsehood in applying for the warrant; and (2) that the statements or omissions were material, or necessary, to the finding of probable cause. *Wilson*, 212 F.3d at 786-87. In other words, "omissions are made with reckless disregard for the truth when an officer recklessly omits facts that any reasonable person would know that a judge would want to know ; and . . . assertions are made with reckless disregard for the truth when an officer has obvious reasons to doubt the truth of what he

or she is asserting." *Id.*at 783. "When faced with an affirmative misrepresentation, the court is required to excise the false statement from the affidavit." *Yusuf*, 461 F.3d at 384. "In contrast, when faced with an omission, the court must remove the 'falsehood created by an omission by supplying the omitted information to the original affidavit.'" *Id.* (quoting *Sherwood v. Mulvihill*, 113 F.3d 396, 400 (3d Cir. 1997)).

Even if all the allegations made by Turzai against the individual defendants are viewed entirely in his favor, plaintiff did not adduce sufficient evidence to permit a reasonable fact-finder to conclude that the individual defendants knowingly and deliberately, or with reckless disregard for the truth, made false statements or omissions which created a falsehood and were material or necessary to the finding of probable cause in applying for the warrant. *Wilson*, 212 F.3d at 781.

### (i) Charges of Criminal Trespass (as a simple trespasser), Stalking and Criminal Mischief

Plaintiff alleges that Bottesch provided false statements of material facts and omitted crucial facts from the affidavit of probable cause in order to buttress her unreasonable conclusions by mischaracterizing that plaintiff admitted to Turko trespassing on Berard's property and because there are no electrical outlets on Berard's house on the side adjacent to plaintiff's property, there could not be any witness statements that plaintiff urinated into Berard's electrical outlets. (Pl.'s Counterstatement 2-3.)

When viewing those facts as true, plaintiff simply shows that the individual defendants failed to investigate fully his alleged conduct. That behavior may amount to negligence, but not knowing, deliberate or reckless disregard for the truth. When faced with an omission, the court must remove the falsehood by supplying the omitted information to the original affidavit. *Sherwood*, 113 F.3d at 400. Adding to Bottesch's affidavit that the Bucks had previous encounters with plaintiff and that there are no outlets on the side of Berard's house adjacent to Turzai's property does not negate the existence of

probable cause. The affidavit does not identify the side of Berard's house on which Kim Buck observed plaintiff urinating. Plaintiff did not adduce evidence that there are no outlets on the outside of Berard's home. Plaintiff's argument that this is a material omission is not valid. There is no dispute that Bottesch was told by the Bucks that they saw plaintiff taking these actions. Under the facts and circumstances known to Bottesch at the time, a reasonable officer would be warranted in relying on the Bucks' statements. The existence of previous hostile encounters between the Bucks and plaintiff does not necessarily affect the veracity of their statements to Bottesch.

When faced with an affirmative misrepresentation, the court is required to excise the false statement from the affidavit. *Yusuf*, 461 F.3d at 384. Plaintiff alleges that he did not admit he went onto Berard's property. (Pl.'s Counterstatement 2.) Even if the affidavit did not include the statement that "Turzai admitted going onto Berard's property," it would still include his admission that he posted signs on Berard's deck, which a reasonable officer would be warranted in believing was probably on her property. The exact boundaries of the properties were not known to the individual officers at the time and the lack of that knowledge would not have affected the reasonableness of their police reports and affidavits and the conclusion that plaintiff may have trespassed on Berard's deck. *See Barna*, 42 F.3d at 819. Even removing the alleged misrepresentations and adding alleged omissions to the affidavit, probable cause still exists to apply for an arrest warrant for the charges of criminal trespass (as a simple trespasser), stalking, and criminal mischief.

### (ii) Charge of Retaliation Against a Witness

The charge listed in Scafede's affidavit of probable cause was approved without change and an arrest warrant was signed by a magistrate judge. A reasonable fact-finder could not conclude that Scafede knowingly or recklessly made falsehoods or omissions in applying for an arrest warrant on the charge of retaliation against a witness. *See Wilson*, 212 F.3d at 786. Plaintiff argues that Scafede

omitted from the affidavit of probable cause that: (1) Berard and the magistrate judge had been friends for ten years; (2) the magistrate judge gave Berard advice about running for public office; (3) Berard was romantically involved with an officer in the Pittsburgh Police Department; and (4) Berard told the magistrate judge about her specific dispute with plaintiff. (Mem. of Law in Support of Pl.'s Mot. for Summ. J. against Def. Scafede at 9.)

Plaintiff contends that it "strains credibility to assume that Scafede would not have known that Berard was dating a police officer, or that Berard was friends with [the magistrate judge]." (Reply to Def. Georgette Scafede's Opp'n to Pl.'s Mot. for Summ. J. 3, ECF No. 38.) To support his argument that Scafede was aware of those relationships, plaintiff points out that "Scafede spoke to [the magistrate judge] and Berard before filing her baseless affidavit of probable cause against plaintiff, and had been a long-time partner with Detective Robin Bottesch, who was well aware of the inappropriate relationship between [the magistrate judge], Berard, and O'Neil." (*Id.*) Despite such general allegations, there is no specific evidence adduced to show that Scafede was aware of any of these relationships. Plaintiff's argument that Scafede spoke with Berard and other police officers involved does not reasonably support a conclusion that Scafede recklessly omitted these "relationships" from the affidavit. Additionally, plaintiff did not adduce any facts that would support a conclusion that such alleged falsehoods and omissions in Scafede's affidavit were material or necessary to a finding of probable cause by a reasonable officer. *See Wilson* 212 F.3d at 786-87.

When faced with an omission, the court must remove the falsehood created by supplying the omitted information to the original affidavit. *Yusuf*, 461 F.3d at 384, *quoting Sherwood*, 113 F.3d at 400. Here, adding to the affidavit that Berard was dating a Pittsburgh Police officer and that she knew the magistrate judge in a professional capacity and that he had previously given her advice does not negate the allegations which supported an arrest for the charge of retaliation against a witness, namely,

plaintiff's alleged verbal abuse towards Berard. Therefore, no reasonable fact-finder could conclude that probable cause was lacking to arrest plaintiff for retaliation against a witness. *See Wilson*, 212 F.3d at 786-87.

### d. Individual Defendants Would be Entitled to Qualified Immunity

The individual defendants argue that even if Turzai had established an issue of material fact regarding probable cause, they would be entitled to qualified immunity. (ECF. No. 24 at 16.) Qualified immunity is an entitlement not to stand trial or face other burdens of litigation and is an immunity from suit rather than a mere defense to liability. *Saucier v. Katz*, 121 S.Ct. 2151, 2156 (2001). Because the individual defendants asserted that they are entitled to qualified immunity, "plaintiff bears the initial burden of showing that the [individual] defendant's conduct violated some clearly established statutory or constitutional right." *Sherwood*, 113 F.3d at 399.

Claims of qualified immunity are evaluated using a two-step process. *Bennett v. Murphy*, 274 F.3d 133, 136 (3d Cir. 2001). First, the court must determine whether the facts, taken in the light most favorable to the plaintiff, show a constitutional violation by the defendants. *Bennett*, 74 F.3d at 136. If no such violation is established, then the inquiry ends and the officer is entitled to qualified immunity. *Id.* Here, plaintiff failed to show probable cause was lacking and cannot establish a constitutional violation by any individual defendant.

Even if plaintiff could establish a constitutional violation, plaintiff did not adduce sufficient evidence to show that it would have been clear to a reasonable officer what the law required under the facts alleged. *See Bennett*, 274 F.3d at 136-37. Under those circumstances, the individual defendants are entitled to qualified immunity and are immune from suit. *Bennett*, 274 F.3d at 136.

## II.    Plaintiff's Remaining Federal Law Claims

Turzai argues he was prosecuted in retaliation for exercising his First Amendment rights. He contends that "the defendants instituted criminal proceedings against [him] because they were offended by the free exercise of his rights of expression as expressed in signs that [he] posted on his real estate and which indicated [his] beliefs." (ECF No. 1, 6.)

The United States Supreme Court has held that the absence of probable cause needs to be alleged and shown by a plaintiff in a retaliatory prosecution claim for violation of the First Amendment. *Hartman v. Moore*, 547 U.S. 250, 263 (2006). The Court noted that the absence of probable cause was required by reason of "the factual difficulty of divining the influence of an investigator . . . upon the prosecutor's mind [and] . . . the added legal obstacle in the longstanding presumption of regularity accorded to prosecutorial decisionmaking." *Hartman*, 547 U.S. at 263; *see Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 489-90 (1999). The Court held that to "bridge the gap between the nonprosecuting government agent's motive and the prosecutor's action, and to address the presumption of prosecutorial regularity. . . . The connection, to be alleged and shown, is the absence of probable cause." *Hartman*, 547 U.S. at 263, *see Gagliardi*, 513 F.Supp.2d at 484-85.

As previously discussed, there was probable cause to arrest plaintiff for the charged crimes of stalking, criminal mischief, criminal trespass (as a simple trespasser), and retaliation against a witness. Plaintiff cannot meet his burden of proof with respect to his retaliatory prosecution claim based upon the First Amendment. *Id.* Summary judgment will be granted for the individual defendants on this claim.

Finally, although not specifically raised, plaintiff seems to be alleging a claim for false arrest. (ECF No. 1.) As noted, probable cause existed to arrest plaintiff for all the charges brought against him. In analyzing false arrest claims, a court need only find that "[p]robable cause . . . exist[ed] as to

any offense that could be charged under the circumstances." *Barna,* 42 F.3d at 819. Therefore, "'[t]he existence of probable cause [for one offense] . . . justifie[s] the arrest- and defeats [the plaintiff's] claim of false arrest-even if there was insufficient cause to arrest on the [second offense] alone.'" *Johnson*, 477 F.3d at 85 (quoting *Edwards v. City of Phila.*, 860 F.2d 568, 576 (3d Cir. 1988)). Therefore, because there was probable cause to arrest plaintiff, there is no genuine issue of material fact with respect to his claim for false arrest.

## III.    No Genuine Issue of Material Fact with Respect to the City of Pittsburgh's Liability

There is no evidence to support plaintiff's contention that his constitutional rights were violated by the individual defendants. Therefore, summary judgment is also appropriate for the City of Pittsburgh because plaintiff cannot pursue a municipal liability claim against the City when there is no underlying constitutional violation. *Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992); *Los Angeles v. Heller*, 475 U.S. 796 (1986). If there is no constitutional violation by a municipality's employees, there can be no municipal liability. *Reich v. Schering-Plough Corp.*, 2010 U.S. App. LEXIS 22478, at *5 (3d Cir. 2010) ("Since there was no violation of [plaintiff's] constitutional rights, there can be no constitutional violation for which the [municipality] could be held liable under Section 1983.") (citing *Brown v. Pennsylvania*, 318 F.3d 473, 482 (3d Cir. 2003)); *Mun. Revenue Servs., Inc. v. McBlain*, 347 F.App'x 817 (3d Cir. 2009) (citing *Startzell v. Ph ila.*, 533 F.3d 183, 204 (3d Cir. 2008)("Because we have found that there was no violation of [the plaintiff's] constitutional rights, we need not reach the claim against the [municipality] under Monell. It too was properly dismissed."). Accordingly, summary judgment will be entered in favor of the City of Pittsburgh.

## IV.    Causes of Action Arising Under Pennsylvania Law

The counts contained in plaintiff's complaint against the individual defendants under count II arise under Pennsylvania law. (Compl. 9-13.) This court will dismiss all claims over which it has

original jurisdiction, and will decline to exercise supplemental jurisdiction over plaintiff's Pennsylvania law causes of action pursuant to 28 U.S.C. § 1367(c)(3).

This court expresses no opinion with respect to whether any of the counts contained in the complaint assert cognizable causes of action under Pennsylvania law. It suffices to note that plaintiff's remaining claims allege no violation of the United States Constitution or federal law and that summary judgment must be granted in favor of defendants on all plaintiff's claims under 42 U.S.C. § 1983.

### Conclusion

After reviewing the undisputed material facts of record, viewing the disputed facts of record in favor of plaintiff, and drawing all reasonable inferences in plaintiff's favor, for the reasons set forth above, the court determines that plaintiff did not establish any genuine issues of material fact with respect to the federal claims and that defendants are entitled to judgment as a matter of law on those claims. Therefore, summary judgment must be granted in favor of all defendants with respect to count I.

The court will decline to exercise supplemental jurisdiction over plaintiff's Pennsylvania law causes of action in count II of the complaint pursuant to 28 U.S.C. § 1367(c)(3).

By the court:

/s/ JOY FLOWERS CONTI
  Joy Flowers Conti
United States District Judge

Date: February 11, 2011